UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW GANTT,

                          Plaintiff,

          v.

JANET RHOTON,

                          Defendants.

Case No. C19-5352 RJB-TLF

REPORT AND
RECOMMENDATION

**Noted for October 2, 2020**

Plaintiff has brought suit under 42 U.S.C. § 1983 seeking injunctive relief against defendants for deliberate indifference to his medical needs. Dkts. 28, 87. This matter is before the Court on a motion to dismiss filed by defendants Jonathon Slothower and Jen Drake. Dkt. 89. In addition, motions for summary judgment have been filed by Defendants Janey Rhoton, Duane Prather, Darren Nealis, Jesus Perez, Ismael Concepcion Poo, and Ilene Anderson (Dkt. 93) and by Defendants Slothower and Drake (Dkt. 111). Plaintiff has responded to the motion to dismiss (Dkt. 108) and has also filed cross motions for summary judgment. Plaintiff's Response, Dkt. 108, Dkt. 116, Dkt. 120, Dkt. 123. Plaintiff also filed a motion to appoint counsel, to which the defendants have responded. Dkt. 124, 125, 126, 127, 128. The District Court has referred this matter to Magistrate Judge Theresa L. Fricke. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

The Court previously ordered early discovery on the issues raised by plaintiff's motion for temporary restraining order and preliminary injunction and to enable plaintiff to amend his complaint. The Court concludes that the parties' discovery has rendered plaintiff's case ready for disposition on the issues of preliminary injunctive relief and – to the extent there is a claim for damages – also on qualified immunity.

As discussed below, the undersigned recommends the Court grant defendant's motions for summary judgment on the basis of qualified immunity and dismiss plaintiff's complaint with prejudice. If the Court denies the motion to dismiss and motions for summary judgment in whole, or in part, and determines that additional discovery is warranted in order to prepare the case for trial, the Court should grant plaintiff's motion to appoint counsel and set a pretrial schedule. Dkt. 124.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Matthew Gantt is an inmate awaiting trial at Pierce County Detention and Corrections Center ("PCDCC"). He filed the original complaint in May 2019 and sought a temporary restraining order in September 2019. Dkt. 4, 28. The Court provided plaintiff with the opportunity to amend the complaint, and the parties engaged in early discovery. Dkt. 30, 69, 87.

In the Second Amended Complaint, Dkt. 87, plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs by denying him medication necessary to treat his mental health disorders (schizophrenia, anxiety, and depression). Plaintiff alleges that the defendants prevented the administration of his preferred medication, Vistaril (generally, "hydroxyzine"), for several months following his booking into PCDCC. He contends that even after defendants started plaintiff on hydroxyzine, defendants ignored plaintiff's continued symptoms of serious mental

1    illness and neglected to adjust his medications accordingly. Plaintiff alleges injuries

2    sustained while he waited for treatment, but he did not include a demand for damages.

3    Dkt. 87. Therefore the only remedy before the Court is his request for injunctive relief.

4    Dkt. 28.

5    Defendants are mental health professionals ("MHPs") employed at PCDCC

6    ("PCDCC defendants") and mental health professionals employed at NaphCare, a

7    private company contracted to provide medical care to inmates at PCDCC ("NaphCare

8    defendants"). Defendant Janet Rhoton is the Mental Health Manager at PCDCC. The

9    remaining PCDCC defendants consist of mental health and psychiatric evaluation

10   specialists (defendants Duane Prather, Darren Nealis, Jesus Perez, Ismael Concepcion

11   Poo, and Ilene Anderson) who periodically evaluated plaintiff's mental health and

12   assessed whether medication was warranted. The PCDCC defendants also handled

13   communication with plaintiff regarding his demands for treatment. NaphCare defendant

14   Jonathon Slothower is the Health Services Administrator at PCDCC, who responded

15   twice to plaintiff's grievances demanding hydroxyzine. NaphCare defendant Jen Drake,

16   a psychiatric ARNP who could prescribe medication on referral from PCDCC mental

17   health professionals, accompanied Duane Prather in one of plaintiff's mental health

18   evaluations.

19   On October 12, 2018, plaintiff was booked into PCDCC and reported that he

20   filled his prescriptions at a Rite Aid pharmacy in Lakewood, which was logged in his

21   chart by a non-defendant nurse. Declaration of Jonathan Slothower re Motion for

22   Summary Judgment, Dkt. 113-1, at 39. On October 13, 2018, defendant Jesus Perez

23   began to evaluate plaintiff's mental health pursuant to the booking, but noise from other

24

25

1  inmates disrupted the interview before it could be completed. *Id.* Defendant Perez

2  observed that plaintiff presented as if depressed, although plaintiff appeared to be a

3  poor historian of his treatment and symptoms. *Id.* He observed plaintiff's complaint that

4  "no one cares" about an overdose he may have suffered, though plaintiff had been

5  evaluated in connection with a possible overdose earlier that day. *Id.* MHP Perez's

6  notes indicate that PCDCC was then in process to verify plaintiff's medications with the

7  Rite Aid. *Id.* On October 15, 2018, a PCDCC pharmacy technician noted that the Rite

8  Aid pharmacy reported holding no current medications for plaintiff. *Id.* at 38.

9         Defendant Ilene Anderson saw plaintiff on October 15, 2018 to complete

10  plaintiff's mental health evaluation. Plaintiff reported that he suffered from multiple

11  disorders: bipolar affective disorder, schizophrenia, and anxiety. MHP Anderson noted

12  that plaintiff did not appear "particularly anxious," and when asked, he denied

13  experiencing any symptoms of the listed disorders. Plaintiff reported that he took

14  hydroxyzine for his anxiety, though MHP Anderson noted that no medications had been

15  verified as current. Dkt. 113-1, at 37.

16         On October 16, 2018, MHP Anderson evaluated plaintiff again. *Id.* Plaintiff

17  requested an MRI and to be evaluated by a neurologist for "head problems." *Id.* MHP

18  Anderson observed "no sadness or depression" and "[n]o evidence of psychosis, mood

19  issues or anxiety." *Id.* She noted plaintiff's stated intent to use any evaluations of his

20  mental health in his criminal defense. *Id.* She denied the referral request and

21  determined that medication was not warranted. *Id.*

22         From October 19, 2018, to January 1, 2019, Plaintiff submitted a series of eleven

23  kites, or request forms, insisting that he had been previously prescribed hydroxyzine

24

25

REPORT AND RECOMMENDATION - 4

1  and requesting that it be administered. Dkt 87-1, at 7-10. Plaintiff received responses

2  from defendant MHPs Prather, Nealis, Perez, Anderson, and Concepcion Poo, all

3  communicating that no medications had been verified as current and that mental health

4  staff had not found clinical evidence to warrant starting medication. Beginning October

5  24, the kites included a request to be reevaluated by PCDCC Mental Health. *Id.* at 7.

6  Plaintiff twice indicated in these kites, first on October 19 and again on November 2,

7  that his prescription was properly located at Lakewood Community Health pharmacy.[1]

8  *Id.* at 7, 8. A response from defendant Ismael Concepcion Poo dated November 20,

9  2018, informed plaintiff that he was "on the list" and would be reevaluated by mental

10  health staff "when time allows." *Id.* at 8.

11      On January 3, 2019, a PCDCC pharmacy tech confirmed with Lakewood

12  Community Health pharmacy that plaintiff had been prescribed a 30-day supply of

13  hydroxyzine in September 2018. Dkt. 113-1, at 36. On the same day, defendants MHP

14  Duane Prather and ARNP Jen Drake evaluated plaintiff's mental health and determined

15  that no medications needed to be started for plaintiff. *Id.* Notwithstanding PCDCC's

16  contact with Lakewood Community Health, MHP Prather advised plaintiff that, as noted

17  in two earlier evaluations, plaintiff had no verified medications with "the clinic provided at

18  booking." *Id.* Plaintiff reported his symptoms as "bad psychosis" during the evaluation,

19  but MHP Prather and ARNP Drake observed no evidence of psychotic symptoms. *Id.*

20  When MHP Prather asked plaintiff to explain his symptoms, plaintiff asked "what

21

22

23  ───────────────

   [1] Plaintiff does not explicitly state that there had been a contradiction with the pharmacy he had supplied
   at booking (a Rite Aid), but his October 19, 2018, kite emphasizes, "my pharmacy [is] Lakewood
24  Community Health [clinic]." Dkt. 87-1, at 7.

25

symptoms do people with psychosis have?" *Id.* Plaintiff expressed his intent to submit another kite logging his symptoms. *Id.*

In his next kite logs, dated January 23 and January 27, 2019, Plaintiff again requested medication, but did not include a description of any symptoms. In response, plaintiff was informed that he had been seen and assessed multiple times and it had been determined on all assessments that medications were not warranted. Dkt. 87-1, at 10. The response to his January 27, 2019 kite from MHP Concepcion Poo informed plaintiff that he could file a grievance and the grievance form could be obtained from an officer in his unit. *Id.* Plaintiff's next two kites, both submitted February 26, 2019, asked who Janet Rhoton and her "boss" were. In response, MHP Nealis informed plaintiff that Janet Rhoton was the manager of the mental health department at PCDCC, and her boss was Chief P. Jackson. *Id.*

On March 25, 2019, plaintiff submitted another kite requesting medication and an explanation for the decision not to prescribe him hydroxyzine, and he announced his intent to sue if his medication situation did not change. Dkt. 87-1, at 11. In response on March 26, 2019, MHP Concepcion Poo advised plaintiff again of the option to file a grievance on March 26, 2019. *Id.* Before receiving this response, plaintiff filed a grievance dated March 25, 2019, requesting medication and claiming delusion, hearing voices, and out-of-body experiences. Declaration of Leslie Medved re Motion to Dismiss, Dkt. 11, at 10. On April 5, 2019, defendant Jonathan Slothower responded to the grievance that plaintiff had been seen by several mental health professionals, who had determined that plaintiff did not require mental health medications. *Id.* PCDCC has no record that plaintiff appealed the resolution of this grievance. Dkt. 11, at 10.

1    The next five kites submitted by plaintiff from April 20-23, 2019, consist of

2    plaintiff's announcement of his intent to sue. He alleged that he had untreated

3    schizophrenia and "psychosis symptom[s]" and requested information on the identities

4    of his intended defendants. Dkt. 87-1, at 11-12.

5    Defendant Perez responded on April 21, 2019, that plaintiff's case had been

6    reviewed by the clinical team at his evaluation on January 3. *Id.* at 11. On April 22,

7    2019, Defendant Nealis responded that plaintiff's pharmacy had not listed any

8    antipsychotic medications in his file and that PCDCC's review of his health found no

9    medications were warranted. *Id.* at 12. Defendant Concepcion Poo reiterated this

10   answer in his response on April 23, 2019. *Id.*

11   On April 20, 2019, plaintiff also approached a non-defendant nurse during

12   medication pass. Plaintiff's Motion for Summary Judgment, NaphCare Sick Calls Log,

13   Dkt. 121, at 18. He asked her why he was not receiving hydroxyzine. *Id.* The nurse

14   consulted plaintiff's medical chart and discovered the discrepancy between the

15   pharmacy he had named at booking and the correct pharmacy verified (in January

16   2019) to have his prescription. *Id.* She requested plaintiff be evaluated, noting plaintiff's

17   threats to sue. *Id.* There is no record of any follow-up from PCDCC Mental Health on

18   this note, and the interaction does not appear in plaintiff's chart.

19   On April 26, 2019, plaintiff filed a proposed complaint (Dkt. 1-1) alleging

20   unconstitutional denial of medical care related to the failure to administer hydroxyzine.

21   Following a report that plaintiff had expressed suicidal statements, a non-

22   defendant MHP evaluated plaintiff's risk of suicide or self-harm on April 30, 2019. Dkt.

23   113-1, at 36. After he confirmed having suicidal thoughts, plaintiff repeated his request

24

25

for medication. *Id.* The MHP relayed to plaintiff that his reported pharmacy had no active medications on file and clarified that she was assessing his safety, not whether he needed medication. *Id.* She noted that plaintiff did not present with any acute mental health symptoms during the evaluation. *Id.* Plaintiff was placed on suicide watch. *Id.*

The next day on May 1, 2019, defendant MHP Darren Nealis followed up for suicide prevention. Dkt. 113-1, at 35. Plaintiff appeared in a normal mood and no longer threatened to harm himself. *Id.* Plaintiff again reported that he had been taking hydroxyzine and Seroquel (another medication) prior to his arrest for "schizophrenia" and that he "hears voices." *Id.* MHP Nealis did not observe any symptoms of psychosis or signs of distraction by voices or other internal stimuli. *Id.* Defendant Nealis recommended that plaintiff's suicide precautions be discontinued and did not refer plaintiff for medication assessment. *Id.*

Defendant Ismael Concepcion Poo conducted a final precautionary evaluation for suicide risk on May 5, 2019. Dkt. 103-2 at 1, Dkt. 113-1, at 35. Plaintiff denied feeling at risk of harm to himself and others and agreed to notify mental health staff if such a risk arose. *Id.* Defendant Concepcion Poo noted that he observed no signs of psychosis and did not refer plaintiff to medication assessment. *Id.*

On May 28, 2019, a non-defendant NaphCare corporate nurse practitioner reviewed plaintiff's medical chart and added plaintiff's verified hydroxyzine prescription to the chart. Dkt. 113-1, at 35. The NP scheduled plaintiff for a full mental health evaluation to follow up. *Id.* Thereafter, PCDCC staff administered hydroxyzine to plaintiff twice daily. *Id.* at 21-30. Plaintiff regular accepted the administered medication at night, but frequently refused to take the daytime doses. *Id.*

1
2
3
4
5
6

Plaintiff submitted a kite for medication assistance again on June 16, 2019. Dkt. 87-1, at 12. He reported that he took his medication at night but was "having a hard time during the day," requesting that his medication be adjusted. *Id.* Defendant MHP Concepcion Poo responded that an appointment had been scheduled for his mental health needs, and that while waiting to be seen, plaintiff should alert PCDCC in case of an emergency. *Id.* at 13.

7
8
9
10
11
12

Plaintiff submitted a second grievance on August 12, 2019, noting that he had filed a prior grievance and requesting new medication to include "Adderall time release." Second Declaration of Leslie Medved re Motion for Summary Judgment, Exhibit C, Dkt. 95-1, at 2. On September 1, 2019, defendant Perez and Janet Rhoton signed the resolution of plaintiff's grievance, advising plaintiff to wait for his scheduled medication review with an ARNP. *Id.*

13
14
15
16
17
18

On September 2, 2019 plaintiff was seen for the first time by non-defendant ARNP Annabelle Vo in the medical clinic. Dkt. 113-1, at 34. The ARNP adjusted plaintiff's prescription for hydroxyzine to be administered solely at night and prescribed a trial of other medications for newly assessed insomnia and PTSD. *Id.* The ARNP noted that plaintiff "also tried to convince provider that he had suffered with psychosis," and that she observed no signs of active hallucinations. *Id.*

19
20
21
22
23

Following this appointment, plaintiff appealed the prior grievance on September 9, 2019. Dkt. 95-1, at 3. He stated his belief that he had suffered "more damage" while waiting for mental health medication. *Id.* He expressed satisfaction that he was "still getting the correct medication," yet he was skeptical of the new medications prescribed to him "by [trial and error]" and claimed that the first dose had caused him to black out.

24
25

1    *Id.* Without specifying his symptoms, he claimed they were "real and [becoming worse]

2    each day." *Id.* Plaintiff's appeal suggested two other medications he preferred

3    (Dexedrine and Ritalin, stimulants not typically prescribed for schizophrenia or anxiety)

4    and requested "quality medical help" to adjust his medications "if [his current

5    medications] are not the answer." *Id.* at 3-4.

6         On September 19, 2019, Defendant Jonathan Slothower denied plaintiff's appeal,

7    citing plaintiff's recent medication adjustment and a lack of evidence that plaintiff had

8    suffered any damage due to waiting for the adjustment. Dkt. 95-1, at 3. The denial

9    reasoned that plaintiff's grievance and appeal, in calling his medication "correct," had

10   not clearly made a request. *Id.* Plaintiff responded on September 21, 2019, that he

11   wished to continue his appeal, because aside from his hydroxyzine prescription, he did

12   not agree with his current medications and he was seeking an MRI to determine

13   damage from the lapse in hydroxyzine administration. Second Declaration of Leslie

14   Medved re Motion for Summary Judgment, Exhibit D, Dkt. 95-2, at 2-3. The grievance

15   process having concluded, no PCDCC staff responded to plaintiff's appeal of his

16   appeal.  *Id.* at 3; Second Declaration of Leslie Medved re Motion for Summary

17   Judgment, Dkt. 95, at 3.

18        Plaintiff filed a third and final grievance on September 30, 2019. Second

19   Declaration of Leslie Medved re Motion for Summary Judgment, Exhibit E, Dkt. 95-3, at

20   2. He requested another medication adjustment, asserting "very real" cognitive

21   difficulties relating to memory and concentration. *Id.* PCDCC records include a response

22   signed by Janet Rhoton and MHP Perez. MHP Perez responded that plaintiff was

23   scheduled for another medication adjustment with the ARNP and denied the grievance,

24

25

on an entry dated a month earlier, on September 1, 2019. *Id.* The discrepancy between dates is not explained. There are no records of plaintiff appealing this resolution.

On November 11, 2019, ARNP Vo saw plaintiff again. Dkt. 113-1, at 32. He reported that the hydroxyzine helped him sleep, but that he "[wanted] to go up on [his] anxiety [medication]." *Id.* He also complained of memory issues, panic attacks, hearing voices, and growing depression. *Id.* He tried to persuade the ARNP of these related to a historical diagnosis of schizophrenia, telling her "I am not going to lie to you and waste my time … I want to talk to you about my delusions … I am not smart enough to make up all these stuff that I told you." *Id.* The ARNP noted that plaintiff "can speak clearly if he does not try to convince the provider that he has schizophrenia," again observing no objective signs of psychosis. *Id.* Plaintiff requested an MRI to assess him for cognitive impairments. *Id.* The ARNP denied the referral request. She assessed plaintiff with generalized anxiety and major depression, increased plaintiff's hydroxyzine dosage, and started plaintiff on medication for depression. *Id.* at 33.

On April 9, 2020, plaintiff filed a declaration, which this Court accepted as plaintiff's filing of his Second Amended Complaint on May 12, 2020. Dkt. 87.


DISCUSSION

A.  Rule 12(b)(6) Pleading

Under Fed. R. Civ. P. 12(b)(6), the court may dismiss a claim based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Khoja v. Orexigen Therapeutics Inc.,* 899 F.3d 988, 1008 (9th Cir. 2018). When considering a motion to dismiss under Rule 12(b)(6), the court construes the claim in the light most favorable to the nonmoving party. A motion to

1    dismiss can be granted only if the complaint, with all factual allegations accepted as

2    true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v.*

3    *Twombly,* 550 U.S. 544, 545 (2007). The complaint must contain sufficient factual

4    matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft*

5    *v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

6        A complaint must contain a "short and plain statement of the claim showing that

7    the pleader is entitled to relief." FRCP 8(a)(2). "Specific facts are not necessary; the

8    statement need only give the defendant fair notice of what the . . . claim is and the

9    grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal

10   citations omitted). However, the pleading must be more than an "unadorned, the-

11   defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Although the

12   Court must accept all the allegations contained in a complaint as true, the Court is not

13   required to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare

14   recitals of the elements of a cause of action, supported by mere conclusory statements,

15   do not suffice." *Id.*

16       Defendants move to dismiss the complaint for two reasons: first, that plaintiff

17   failed to request relief in his complaint; and second, that plaintiff's complaint is illegible.

18   Dkt. 89, at 3-4. The complaint may not explicitly request the Court for specific damages,

19   but plaintiff repeatedly expresses his demand for medication and dissatisfaction with the

20   quality of medical treatment he has received. Dkt. 87, at 1, 2, 4, 5. While plaintiff's

21   complaint lacks numbered paragraphs or explanatory headings, the text of the

22   complaint is not "illegible," as defendants claim. Dkt. 89, at 3. Plaintiff's complaint laid

23   out a factual account and a theory of liability for all defendants, and defendants were

24

25

1  able to respond to plaintiff's substantive arguments in their motion for summary

2  judgment. Accordingly, this motion to dismiss should be denied.

3

4       B.  <u>Summary Judgment</u>

5       Summary judgment is supported "if the pleadings, the discovery and disclosure

6  materials on file, and any affidavits show that there is no genuine issue as to any

7  material fact and that the movant is entitled to judgment as a matter of law." Federal

8  Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to

9  demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v.*

10  *Catrett,* 477 U.S. 317, 323 (1986). If the moving party meets their initial burden, an

11  adverse party may not rest upon the mere allegations or denials of his pleading; his or

12  her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific

13  facts showing there is a genuine issue for trial. FRCP 56(e)(2). The nonmoving party is

14  required to present specific facts, and cannot rely on conclusory allegations. *Hansen v.*

15  *U.S.,* 7 F.3d 137, 138 (9th Cir. 1993).

16       A genuine dispute concerning a material fact is presented when there is sufficient

17  evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v.*

18  *Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant

19  to an element of a claim or defense and whose existence might affect the outcome of

20  the suit," and the materiality of which is "determined by the substantive law governing

21  the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

22  (9th Cir. 1987).

23

24

25

REPORT AND RECOMMENDATION - 13

1    When the Court considers a motion for summary judgment, "[t]he evidence of the

2    non-movant is to be believed, and all justifiable inferences are to be drawn in [their]

3    favor." *Id.,* at 255. Yet the Court is not allowed to weigh evidence or decide credibility.

4    *Anderson v. Liberty Lobby, Inc.*, at 255. The Court may not disregard evidence solely

5    based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th

6    Cir. 2015).

7    The court must determine whether the specific facts that are presented by the

8    non-moving party, considered along with undisputed context and background facts,

9    would show that a rational or reasonable jury might return a verdict in the non-moving

10   party's favor based on that evidence. *Emeldi v. University of Oregon,* 698 F.3d 715,

11   728-29 (9th Cir. 2012).

12        *1.  Failure to Exhaust*

13   Before a pretrial detainee may bring a civil rights action under 42 U.S.C. § 1983,

14   he must first exhaust all available administrative remedies. Under the Prison Litigation

15   Reform Act of 1995 ("PLRA"),

16       No action shall be brought with respect to prison conditions under section 1983 of
         this title, or any other Federal law, by a prisoner confined in any jail, prison, or other
17       correctional facility until such administrative remedies as are available are
         exhausted.

18   42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v.*

19   *Churner*, 532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance

20   under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a

21   plaintiff must exhaust *all* levels of an available grievance procedure before he can initiate

22   litigation. *See id.* at 736-41; *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Even when

23   the prisoner seeks relief not available in grievance proceedings, notably money damages,

24

25

1   exhaustion is still a prerequisite to suit. *Booth*, 532 U.S. at 741. If a claim is not

2   exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir.

3   2002).

4       Failure to exhaust administrative remedies is properly brought as a summary

5   judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the

6   defendant proves there was an available administrative remedy and the offender failed to

7   exhaust the available remedy, the burden shifts to the plaintiff. The plaintiff must show

8   there was something about his particular claim which made the "existing and generally

9   available administrative remedies effectively unavailable to him." *Williams v. Paramo*, 775

10  F.3d 1182, 1191 (9th Cir. 2015) (*citing Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5

11  (9th Cir. 1996)).

12      Defendants move for summary judgment on plaintiff's claims on the grounds that

13  plaintiff failed to exhaust his administrative remedies. Dkt. 93 at 6, Dkt. 111 at 17.

14  Defendants submit PCDCC's records of plaintiff's grievances, which show that plaintiff

15  filed three grievances relating to his claims but failed to appeal the first and third of those

16  grievances to conclusion. Dkt. 95-1, 95-2, 95-3. Plaintiff disputes the record supplied by

17  defendants and alleges that at least one of his appeals is missing from the record.

18      Here, the evidence indicates that plaintiff argued at least his second grievance to

19  the conclusion of the appeals process but was untimely in his filings. In response to the

20  ongoing medication regime beginning May 28, 2019, plaintiff submitted a kite on June 16,

21  2019, to request an adjustment of his hydroxyzine prescription. Dkt. 87-1, at 7. Plaintiff

22  submitted a formal grievance on August 12, 2019. Dkt. 95-2, at 2. His grievance was

23  unfavorably resolved on September 1, 2019. *Id.* Plaintiff appealed the resolution of his

24

25

grievance on September 9, which received its final denial on September 19. *Id.* at 3. Plaintiff filed his grievance 26 days following the filing of his kite on the subject, one day past the deadline detailed in the PCDCC inmate handbook. Neither of plaintiff's other filed grievances were appealed.

The law requires an inmate to exhaust all administrative remedies, "which means using all steps that the agency holds out, and doing so *properly*[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotations omitted) (emphasis in original); *Young*, No. 17-cv-5572. PCDCC requires an inmate to complete all steps of the grievance process, including filing all grievance appeals in a timely manner.

Based on the evidence detailed above, the Court finds that Defendants have carried the initial burden of showing the absence of exhaustion in this case. The burden now shifts to Plaintiff, "who must show that there is something particular in his case that made the existing and generally available remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

Acts by prison officials preventing the exhaustion of administrative remedies may make administrative remedies effectively unavailable. *See Nunez v. Duncan*, 591 F.2d 1217, 1224-25 (9th Cir. 2010); *Young*, No. 17-cv-5572 Dkts. 26, 27. "The ultimate burden of proof, however, remains with the defendants," and the evidence must be viewed in the light most favorable to the plaintiff. *Paramo*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172); *Young*, No. 17-cv-5572, Dkts. 26, 27. The Supreme Court recently held there are three circumstances in which an administrative remedy is not capable of potential relief:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Ross v. Blake,* 136 S. Ct. 1850, 1853–1854 (2016); *Young*, No. 17-cv-5572 Dkts. 26, 27.

Plaintiff contends that the defendants "sabotaged" his appeal to his first grievance and failed to issue a response to which he could have appealed. Plaintiff's Declaration re Motion for Summary Judgment, Dkt. 117, at 3-4. He points to the language of the second grievance he filed, that "I've written [a grievance] already but they want another," to support his claim he was never issued the response to his first grievance. *Id.* at 3. He claims that when he inquired about the result of his first grievance, he was instructed that it had been "lost" and therefore he should file a second grievance instead. *Id.* Plaintiff asserts that his first grievance would have been exhausted, had he received the response to inform him of its denial.

Viewing the evidence in the light most favorable to plaintiff as the non-moving party, the Court concludes that PCDCC appears to have made administrative resolution of plaintiff's initial grievance effectively unavailable. Plaintiff's first grievance deals most directly with the allegations giving rise to plaintiff's complaint. Whether or not the disputed response was eventually delivered to plaintiff, it is dated 11 days past the filing of plaintiff's initial grievance, which fails to comply with PCDCC's own rules for timely grievance resolution. *See* Dkt. 11. Since neither party strictly observed timeliness within PCDCC procedure, and PCDCC's response to plaintiff's repeatedly asserted grievances

seems to have issued the merely the same responses as plaintiff received to his many kites, the Court finds that plaintiff has shown PCDCC's administrative remedies to be ineffective to address plaintiff's concerns.

Even if plaintiff's claims are not barred by the exhaustion requirement, the Court concludes that plaintiff's claims fail as a matter of law, and should be dismissed with prejudice, as discussed below.

### 2.  Deliberate Indifference Claims

Plaintiff has failed to show that any of the defendants have violated his Fourteenth Amendment rights to medical care as a pretrial detainee.

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Under Section 1983, Plaintiff must show that each of the defendants was involved in violating the Constitution; liability of an official will only be found if there is individual culpable action or inaction. *Hines v. Youseff,* 914 F.3d 1218 1228 (9th Cir. 2019).

To state a Fourteenth Amendment claim relating to medical care of a pre-trial detainee, a plaintiff must include factual allegations that a state actor acted, or failed to act, in a manner that shows deliberate indifference to his serious medical needs.

*Gordon v. County of Orange,* 888 F.3d 1118, 1124-25 (9th Cir. 2018). The deliberate indifference standard under the Fourteenth Amendment (in contrast with the Eighth Amendment standard, that has a subjective component) is objective. *Id.* The elements are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.,* at 1125. The defendant's conduct must be objectively unreasonable; concerning element (iii), plaintiff is required to show more than negligence, but less than subjective intent – "something akin to reckless disregard." *Id.* (citations and internal quotations omitted).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. 97, 106 (1976); *see generally, Hutchinson v. U.S.,* 838 F.2d 390, 394 (9th Cir. 1988) ("mere negligence, without more, does not violate a prisoner's Eighth amendment rights").

If the prison's medical staff is not competent to examine, diagnose, and treat inmates' medical problems, they must "refer prisoners to others who can." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *overruled on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995); *see also Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition,

1   even if some treatment is prescribed, may constitute deliberate indifference in a

2   particular case. *Id.*

3         The parties do not dispute that plaintiff had a mental health disorder that was a

4   serious medical need at the times relevant to his complaint. Defendants acknowledge

5   that between plaintiff's booking and May 28, 2019, plaintiff received no medication for

6   an anxiety disorder later assessed by a NaphCare ARNP. Yet the record demonstrates

7   that, considering the evidence in the light most favorable to plaintiff as the non-moving

8   party, none of the named defendants committed conduct that would meet the objective

9   standard of deliberate indifference.

10         <u>Supervisory Officials</u>

11         Plaintiff's argument for deliberate indifference against all defendants relies on the

12   sole claim that he was wrongly denied medication over a period of seven months.

13   Plaintiff argues that two officials (Janet Rhoton and Jonathon Slothower) are liable

14   because they are in some type of supervisory position or position of responsibility. Yet

15   Section 1983 supervisory liability cannot be based on *respondeat superior. See Monell*

16   *v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d

17   611 (1978). A § 1983 action may not be brought against a supervisor on a theory that

18   the supervisor is liable for the acts of his or her subordinates. See *Polk County v.*

19   *Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981). Instead, only the

20   individual actions of the defendants – whether participation or direction of the alleged

21   violation, or knowing of the violation and failing to act to prevent it – can make a

22   defendant liable for violations under his or her supervision. *See Barren v. Harrington*,

23

24

25

1    152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154, 119 S. Ct. 1058, 143

2    L. Ed. 2d 63 (1999).

3

4        *Janet Rhoton*

5        Plaintiff's arguments against Janet Rhoton are non-specific: He faults Rhoton's

6    management of the PCDCC mental health department, but he raises no argument

7    regarding Rhoton's individual involvement or participation in his mental health care.

8        No evidence indicates that Rhoton was involved in any decision not to refer

9    plaintiff to medical assessment or to prescribe medication. The record only contains two

10   instances of Defendant Rhoton's interaction with plaintiff's case, where her signature

11   appears alongside Defendant Perez's signature on two of plaintiff's grievance denials.

12   Dkt. 95-1, at 2; Dkt. 95-3, at 2. The extent of Rhoton's involvement is limited to actions

13   taken in her supervisory capacity over the MHPs who directly handled plaintiff's

14   complaints. Taken in the light most favorable to plaintiff, these facts indicate that

15   defendant Rhoton approved of the reasoning provided to deny at least two of plaintiff's

16   grievances. Yet no reasonable jury would find on these facts that Rhoton had reckless

17   disregard of any substantial medical risk to plaintiff.

18       *Jonathan Slothower*

19       Plaintiff argues that as the Health Services Administrator, Jonathan Slothower had

20   the responsibility to ensure the proper prescription and administration of all medications

21   at PCDCC. Slothower did not interact with plaintiff, outside of two responses to plaintiff's

22   grievances in April and September 2019 and a single occasion when he administered

23   one of plaintiff's daily doses of hydroxyzine in May.

24

25

REPORT AND RECOMMENDATION - 21

1         In April 2019, Slothower denied plaintiff's grievance demanding medication, based

2    on the multiple evaluations finding medications were not warranted. Dkt. 11, at 10.

3    Slothower used similar reasoning to deny a grievance appeal in September 2019. Dkt.

4    95-1, at 3.

5         These facts indicate, at most, that Slothower knew and ignored plaintiff's

6    prescription from Lakewood Health in April. Yet a prior prescription does not establish

7    plaintiff's serious need for medication where plaintiff had been evaluated by PCDCC

8    MHPs. In light of their evaluations, the record cannot support the conclusion that

9    Slothower "did not take reasonable available measures to abate that risk, even though a

10   reasonable official in the circumstances would have appreciated the high degree of risk

11   involved – making the consequences of the defendant's conduct obvious". *Gordon v.*

12   *County of Orange,* 888 F.3d at 1125.

13        Furthermore, neither Rhoton nor Slothower may be liable for the actions of the

14   MHPs under their supervision, including the findings of their evaluations. The claims

15   against defendants Rhoton and Slothower should therefore be dismissed.

16        <u>PCDCC Mental Health Professionals</u>

17        With respect to MHPs Perez, Nealis, Prather, Concepcion Poo, and Anderson,

18   plaintiff argues that each assessment at which medications were found unwarranted

19   demonstrated the MHPs' deliberate indifference to his need for hydroxyzine. Plaintiff

20   argues that the delay at PCDCC to verify and administer a prescription for hydroxyzine

21   was a deliberate oversight that provided a pretext to leave him unmedicated.

22        All the MHPs evaluated plaintiff in person at least once and refused to refer

23   plaintiff to a professional who could prescribe mental health medications. Plaintiff

24

25

1   argues that these defendants had access to his medical chart at all times, so after the

2   pharmacy techs at PCDCC had added his hydroxyzine prescription from Lakewood

3   Community Health, the MHPs knew or should have known about his need for

4   medication. Dkt. 87, at 5-8. He asserts that the defendants should have prescribed it at

5   once, or as soon as each came into contact with him during his mental health or suicide

6   risk evaluations. *Id.* Furthermore, plaintiff argues that after a non-defendant ARNP had

7   prescribed hydroxyzine, the MHPs should have acknowledged the seriousness of

8   plaintiff's need for medication. Dkt. 87, at 7. Plaintiff alleges he told Prather that he

9   hallucinated and was hearing voices. *Id.* at 8. According to the Second Amended

10  Complaint, each of the MHPs demonstrated their indifference to plaintiff's mental health

11  by refusing to expedite plaintiff's request to adjust his medication.

12      Defendants point to the record that none of the evaluating MHPs noted

13  symptoms of anxiety, for which hydroxyzine was prescribed. Dkt. 111, at 3. Defendants

14  add that, at plaintiff's request, the MHPs also examined plaintiff for symptoms of

15  psychosis and found none – and in any case, hydroxyzine is not an anti-psychotic drug.

16  *Id.* Finally, PCDCC mental health policy does not guarantee continuation of a prior

17  prescription on booking. PCDCC MHPs may independently evaluate whether

18  medication is warranted before referral for hydroxyzine, which is among the class of

19  drugs subject to heightened control in the facility for its desirability among inmates. *Id.*

20      Regarding all the MHPs who evaluated plaintiff, the fact that plaintiff demanded

21  that his old prescription for hydroxyzine be reinstated cannot by itself support a

22  determination that each defendant was deliberately indifferent to a serious medical need

23  for mental health medication. *See, e.g.*, *Pate v. Kitsap Cty.*, 2009 WL 250307, at *5

24

25

1   (W.D. Wash. 2009) (county jail had no medical evidence showing that the plaintiff

2   required certain care because a "duty of care cannot be established simply by an

3   inmate's demands.") Likewise, that plaintiff was previously prescribed hydroxyzine does

4   not establish that his anxiety constituted a serious medical need that could only be met

5   by a renewed prescription. Each defendant's conduct therefore must be examined

6   based on the professional evaluations and medical records available to each.

7           *Perez*

8           When defendant Jesus Perez began plaintiff's first evaluation in October 2018,

9   he noted that plaintiff appeared depressed and complained of suffering from a possible

10  drug overdose. Perez opined in his notes that plaintiff was a "poor historian," which

11  plaintiff argues is evidence of disregard for plaintiff's wellbeing. Dkt. 113-1, at 37. Perez

12  did not complete the evaluation due to a disturbance in the facility. *Id.* Regardless of

13  Perez's attitude toward plaintiff, the interruption, and subsequent deferral of the

14  evaluation to the next day with MHP Anderson, cannot be interpreted as showing

15  reckless disregard of any need for medication. Perez later responded to one of plaintiff's

16  kites in November 2018 that there were no medications on record for plaintiff, after

17  plaintiff had named Lakewood Community Health as his pharmacy. Dkt 87-1, at 9. This

18  also fails to show reckless disregard of a serious risk to plaintiff, since plaintiff's

19  prescription was still unconfirmed by PCDCC pharmacy technicians and plaintiff's kite

20  did not clarify the initial mix-up. The reliance on the current notes in plaintiff's chart

21  cannot be interpreted as displaying indifference.

22          Perez did not interact with plaintiff again until April 2019, in his response to

23  plaintiff's kite announcing his intent to sue unless hydroxyzine was immediately

24

25

1    prescribed. Dkt. 87-1, at 11. Perez's response informed that plaintiff's case did not

2    warrant medication, based on the review conducted four months earlier on January 3.

3    *Id.* While plaintiff's chart had already been updated to include his hydroxyzine

4    prescription, Perez permissibly relied on the findings of the evaluating MHPs in his

5    response. Defendant Perez's final involvement with plaintiff's case occurred in

6    September 2019, when Perez twice denied plaintiff's grievances requesting an

7    immediate medication adjustment and advised plaintiff to wait until his next scheduled

8    appointment with an ARNP. Dkt. 95-1, at 2. That wait lasted little over a month after

9    plaintiff's second grievance. Nothing in the record indicates that Perez caused or

10   lengthened this delay.

11       The Court should find that even taken in the light most favorable to plaintiff, these

12   facts do not show Perez "did not take reasonable available measures to abate that risk,

13   even though a reasonable official in the circumstances would have appreciated the high

14   degree of risk involved – making the consequences of the defendant's conduct obvious."

15   *Gordon v. County of Orange,* 888 F.3d at 1125.

16       Defendants have shown there is no genuine dispute of material fact to establish

17   objective deliberate indifference. Accordingly, the undersigned recommends that the

18   claims against Perez be dismissed.

19       *Ilene Anderson*

20       Defendant Ilene Anderson saw plaintiff twice in October to complete plaintiff's

21   booking evaluation. She noted that no medications had been verified as current and

22   examined plaintiff for symptoms of anxiety, bipolar disorder, depression, and

23   schizophrenia. Dkt. 113-1, at 37. Plaintiff did not report feeling symptoms of anxiety or

24

25

1   other disorders, and plaintiff had expressed his intent to establish his "head problems"

2   for his criminal defense. *Id.* Plaintiff argues that since he had informed the MHP of

3   various diagnoses, Anderson knew and ignored plaintiff's need for medication. Dkt. 87,

4   at X. Yet without observing relevant symptoms, MHP Anderson's finding that medication

5   was not warranted does not indicate reckless disregard of a serious medical risk to

6   plaintiff. *Id.*

7          Aside from her response to plaintiff's kite in November 2018 that plaintiff had no

8   medications on record; there is no further record of Anderson's interaction with plaintiff's

9   case after January 3, 2019, when plaintiff's prescription was confirmed. Dkt 87-1, at 9.

10  Altogether, these facts taken in the light most favorable to plaintiff fail to establish any

11  genuine dispute of material fact on the issue of objective deliberate indifference.

12  Defendants' motion for summary judgment should be granted as to defendant

13  Anderson.

14          *Duane Prather and Jen Drake*

15          Aside from Prather responding to one of plaintiff's early pre-confirmation kites,

16  Prather and Drake's only significant involvement in plaintiff's case is the examination

17  conducted on January 3, 2019, the same day plaintiff's prescription with Lakewood

18  Community Health was confirmed. Whether Prather had any information about the

19  confirmed prescription is unclear, but in this evaluation, plaintiff did not request treatment

20  for anxiety and exhibited no anxiety symptoms. Instead, Prather noted plaintiff's claims of

21  psychosis and his inability to describe the symptoms, which Drake corroborated.

22          Even in the light most favorable to plaintiff, these facts merely indicate that Prather

23  and Drake did not believe plaintiff's account, but still assessed plaintiff according to

24

25

REPORT AND RECOMMENDATION - 26

1   objective observations – no jury would find that this supports a finding of deliberate

2   indifference, i.e., that Prather or Drake "did not take reasonable available measures to

3   abate that risk, even though a reasonable official in the circumstances would have

4   appreciated the high degree of risk involved – making the consequences of the

5   defendant's conduct obvious". *Gordon v. County of Orange,* 888 F.3d at 1125.

6       *Darren Nealis*

7       Darren Nealis also sent a pre-confirmation response to plaintiff's early kites in

8   November 2018 that plaintiff had no verified medications and the MHPs did not have

9   clinical evidence to support a new prescription. Later, in April 2019, Nealis responded to

10   a kite with information for plaintiff regarding Janet Rhoton's role and PCDCC. In

11   response to a kite complaining of untreated psychosis the next day, Nealis wrote that no

12   antipsychotic medications were on file and that mental health staff had not found clinical

13   evidence of plaintiff's complaints. *Id.* at 12.

14       Shortly thereafter, Nealis examined plaintiff's mental condition in a suicide

15   prevention evaluation in May 2019. Plaintiff exhibited no symptoms indicating he was at

16   risk for suicide or self-harm in this evaluation. Instead, plaintiff claimed again to suffer

17   from psychosis and hallucinations. Dkt. 113-1, at 35. By this point, plaintiff's confirmed

18   prescription for hydroxyzine had been recorded in plaintiff's chart for 4 months, but

19   plaintiff did not profess to feel anxiety or exhibit objective symptoms indicating that he

20   was suffering from psychosis.

21       Viewed in the light most favorable to plaintiff, these facts indicate that Nealis

22   should have known about the hydroxyzine prescription and plaintiff's history of anxiety,

23   and that Nealis may have ignored this when determining plaintiff's risk of suicide or self-

24

25

harm. Yet Nealis's decision not to refer plaintiff for further treatment relied on a lack of

objective symptoms to support plaintiff's complaints or show that plaintiff was a danger

to himself. No jury could reasonably conclude that Nealis had ignored a serious medical

risk to plaintiff, when Nealis's evaluation specifically reviewed plaintiff's mental health

risks and relied on objective observations. Even if oversight of plaintiff's September

prescription constituted negligence of plaintiff's general medical situation, no jury would

find that this supports a finding of deliberate indifference, i.e., that Nealis "did not take

reasonable available measures to abate that risk, even though a reasonable official in

the circumstances would have appreciated the high degree of risk involved – making

the consequences of the defendant's conduct obvious". *Gordon v. County of Orange*,

888 F.3d at 1125.

*Ismael Concepcion Poo*

Of all the MHPs, defendant Concepcion Poo appears to have communicated the

most with plaintiff, but the content of the communications does not differ significantly

between defendants. As with the other defendants, MHP Concepcion Poo was among

the staff who cited the findings of plaintiff's evaluation at booking, when plaintiff sent the

first kites October and November 2018. Dkt 87-1, at 10. Concepcion Poo also informed

plaintiff twice of the procedure to file a grievance, first in January 2019 and then in

March 2019. *Id.* In April 2019, when plaintiff threatened to sue, Concepcion Poo

reiterated MHP Nealis's response that there were no anti-psychotic prescriptions on file

and multiple evaluations had found no medications were warranted. *Id.* at 12.

Defendant Concepcion Poo also conducted the final evaluation of plaintiff's risk

of suicide in May 2019, in which plaintiff denied subjective feelings of risk and defendant

1   Concepcion Poo found no signs of psychosis. Dkt. 113-1, at 35. After PCDCC began to

2   administer plaintiff's hydroxyzine, plaintiff sent a June 2019 kite requesting additional

3   medications and for his current dosage to be adjusted. Defendant Concepcion Poo

4   responded that plaintiff had a scheduled appointment and emergency treatment was

5   available if necessary. *Id.* at 13.

6       As with defendant Nealis, considering these facts in the light most favorable to

7   plaintiff as the non-moving party, the record suggests that Concepcion Poo may have

8   overlooked the hydroxyzine prescription when responding to plaintiff's kites or during

9   the suicide risk evaluation. This oversight alone cannot establish that Concepcion Poo,

10  or any of the MHPs had ignored a serious medical risk to plaintiff, given the objective

11  observations underlying all determinations of whether a different medication regimen

12  was warranted. Therefore even if oversight of plaintiff's September prescription was an

13  oversight in plaintiff's general medical situation, no jury would find that this supports a

14  finding of deliberate indifference, i.e., that Concepcion Poo "did not take reasonable

15  available measures to abate that risk, even though a reasonable official in the

16  circumstances would have appreciated the high degree of risk involved – making the

17  consequences of the defendant's conduct obvious". *Gordon v. County of Orange,* 888

18  F.3d at 1125.

19      *3.  Qualified Immunity*

20      If the Court interprets Plaintiff's Second Amended Complaint as a complaint that

21  includes a demand for damages, then qualified immunity would be an issue. Qualified

22  immunity is an affirmative defense to damages liability and does not bar actions for

23  declaratory or injunctive relief. *American Fire, Theft & Collision Managers, Inc. v.*

24

25

1   *Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). Qualified immunity would not apply if the

2   only remedy in this matter is a request for injunctive relief.

3          Qualified immunity should be assessed at the earliest possible juncture, because

4   it is an immunity from suit. *Pearson v. Callahan,* 555 U.S. 223, 232-33 (2009); *see,*

5   *Morales v. Fry,* 73 F.3d 817, 822 (9th Cir. 2017) ("comparing a given case with existing

6   statutory or constitutional precedent is quintessentially a question of law for the judge,

7   not the jury.") Unless plaintiff makes a two-part showing, qualified immunity shields

8   government officials from liability. The plaintiff must show both: the official(s) violated a

9   federal statutory or constitutional right, and -- at the time of the alleged act or failure to

10   act there was clearly established law that defined the contours of the federal right

11   objectively putting the official(s) on notice – i.e., any reasonable official in the

12   defendant's shoes would have understood that what they were doing was unlawful. *City*

13   *of Escondido v. Emmons,* 139 S.Ct. 500, 503 (2019); *District of Columbia v. Wesby,* 138

14   S.Ct. 577, 589 (2018); *Monzon v. City of Murrieta,* 966 F.3d 946, 951 (9th Cir. 2020).

15          When qualified immunity is reviewed in the context of a defense motion for

16   summary judgment, the evidence must be considered in the light most favorable to the

17   plaintiff with respect to central facts.  *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per

18   curiam). If there is a genuine issue of material fact concerning both: (1) Whether it

19   would be clear to a reasonable officer that their conduct was unlawful under the

20   circumstances they confronted, and (2) Whether the defendant's conduct violated a

21   constitutional right" then summary judgment granting qualified immunity is not

22   appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

23

24

25

REPORT AND RECOMMENDATION - 30

To determine whether there was clearly established law, the Court has stated, "[w]hile there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate"; and the Court has also observed, "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, at 590. A clearly established right exists if "controlling authority or a robust consensus of cases of persuasive authority" have held, on facts that are close or analogous to the current case, that such a right exists. *Hines v. Youseff*, 914 F. 3d 1218, 1229-1230 (9th Cir. 2019). In some contexts, there may be a general constitutional rule that has been identified in court decisions – and it may apply with such obvious clarity to the specific conduct of a defendant, that qualified immunity will not apply even though existing case law did not describe the specific factual scenario in the current situation. *United States v. Lanier,* 520 U.S. 259, 271 (1997); *Bonivert v. City of Clarkston,* 883 F.3d 865, 872-73 (9th Cir. 2018).

Here, plaintiff's sole argument is that a serious medical need had been ignored when MHPs decided against medicating plaintiff despite the existence of a specific prescription prior to plaintiff's booking in PCDCC. Plaintiff points to no clearly established law, nor has the Court located any such precedent, on facts that are similar to this case – i.e., an official knew of a pretrial detainee's prior diagnoses or prescriptions and decided not to treat conditions with the same medication, when the pretrial detainee was reporting the symptoms, he was being monitored and evaluated, and symptoms were not observed in evaluation. As such, there is no prior clearly established law that facts as in plaintiff's situation would create liability, nor any law that

1    suggests that any of the actions undertaken by the defendants violate the Fourteenth

2    Amendment.

3            No reasonable person would have known that a professional determination that

4    there was no medical need to prescribe a particular medication would violate clearly

5    established constitutional rights. Likewise, no reasonable person would have known that

6    holding a supervisory position over medical professionals making such a determination

7    would violate constitutional rights. Therefore, all defendants are subject to qualified

8    immunity and the suit against them should be dismissed.

9

10            C.   Preliminary Injunctive Relief

11           Plaintiff's motion for injunctive relief (Dkt. 28) has been fully briefed and the Court

12   directed the parties to conduct early discovery. For the same reasons discussed above

13   regarding plaintiff's deliberate indifference claims, plaintiff has failed to meet the

14   standard for preliminary injunctive relief. Injunctions are "to be used sparingly, and only

15   in a clear and plain case." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Irwin v.*

16   *Dixon*, 50 U.S. 10, 33 [1850]); *see also Sampson v. Murray*, 415 U.S. 61, 83 (1974). "A

17   preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v.*

18   *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instead, injunctive relief "may

19   only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at

20   22.

21           To obtain a preliminary injunction, a party must demonstrate that: (1) he is likely

22   to succeed on the merits; (2) he will likely suffer irreparable harm in the absence of

23   preliminary relief; (3) the balance of equities tips in his favor; (4) an injunction is in the

24

25

public interest. Id. at 20. The moving party must make a showing on all four factors in order to obtain a preliminary injunction. *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (citing to *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Alternatively, in the Ninth Circuit, "a plaintiff may also obtain a preliminary injunction by showing 'serious questions go[] to the merits' of its claims and a balance of hardships that tips "sharply" towards the plaintiff, so long as it makes a showing on the other two factors." *A Woman's Friend*, 901 F.3d at 1167 (quoting *Alliance*, 632 F.3d at 1135). However, a plaintiff may not obtain an injunction merely because an irreparable injury is possible, the plaintiff must show that the irreparable injury is likely in the absence of preliminary relief. *Am. Trucking Association, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Plaintiff has not established serious questions on the merits, or that the balance of hardships tip toward his position; nor has he shown that he will suffer irreparable injury in the absence of preliminary relief. *A Woman's Friend*, 901 F.3d at 1167 (quoting Alliance, 632 F.3d at 1135).

Although the Court construes the pro se complaint liberally, plaintiff's complaint and motion do not include facts that would suggest serious irreparable harm. Additionally, plaintiff has not demonstrated the likelihood of such harm absent the relief sought. Although plaintiff has claimed to be at risk of self-harm, his subsequent evaluations have found him without suicidal or self-injurious intent. Finally, the plaintiff fails to show a likelihood of success on the merits as to the elements of deliberate indifference, including whether defendants acted in an objectively unreasonable manner. This motion should be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

        D.  Appointment of Counsel

        Plaintiff has additionally filed his fifth motion for counsel. Dkt. 124. In "exceptional

circumstances," a district court may appoint counsel for indigent civil litigants pursuant

to 28 U.S.C. § 1915(e)(1)). *Rand v. Roland*, 113 F.3d 1520, 1525 (9th Cir. 1997),

*overruled on other grounds,* 154 F.3d 952 (9th Cir. 1998). To decide whether

exceptional circumstances exist, the Court must evaluate both "the likelihood of success

on the merits [and] the ability of the petitioner to articulate his claims *pro se* in light of

the complexity of the legal issues involved." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th

Cir.1991) (quotations omitted).

        Plaintiff claims that his access to the PCDCC law library is limited due to the

coronavirus-related protocols. Dkt. 124, at 2. Defendants have responded that plaintiff

has not sought access to the library's portable kiosk since May. Defendants' Response,

Dkt. 126, at 2, citing Declaration of Douglas Watkins, Dkt. 127. These circumstances

alone would not constitute a need for appointed counsel.

        Yet in light of possible legal questions regarding when plaintiff should have been

treated for his mental illness and what medication the defendants should have

administered, if the Court denies the motions for summary judgment and sets this case

for trial, the Court should recognize plaintiff's current circumstances as exceptional in

the context of a case that is being prepared for trial, and should consider granting

plaintiff's motion for appointed counsel.

        E.  Plaintiff's Motions for Summary Judgment

        Plaintiff filed a second motion for summary judgment with declaration on August

3, 2020. Dkts. 120, 121. Defendants have filed a motion requesting that the Court enter

REPORT AND RECOMMENDATION - 34

an Order to Show Cause directed to plaintiff as to why the motion should not be stricken as successive to his June 25 motion for summary judgment (Dkt. 116), or in the alternative, that defendants receive an extension to time for defendants to file response briefs to plaintiff's motion. Dkt. 123. Plaintiff's motion was filed in violation of Local Civil Rule 7(e)(3). Yet given the identical arguments raised on plaintiff's response to defendants' motion for summary judgment and his two motions, as well as the undersigned's recommendation for dismissal with prejudice (discussed above), the undersigned recommends both of plaintiff's motions for summary judgment be considered duplicative, and deny the motions without further briefing.

## IN FORMA PAUPERIS STATUS ON APPEAL

The Court must also decide whether plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court must determine whether appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

While the Court was not persuaded on the merits of plaintiff's claim, there is no evidence that his appeal is frivolous or is taken in bad faith. Accordingly, the Court recommends that *in forma pauperis* status should continue on appeal.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court grant defendants' motions for summary judgment and dismiss plaintiff's complaint.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **October 2, 2020**, as noted in the caption.

Dated this 17th day of September, 2020.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 36